IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| JUSTEN GRANT HALL, | § | |
| Petitioner, | § | |
| | § | |
| v. | § | No. 3:10-cv-00135-FM |
| | § | (Death penalty case) |
| RICK THALER, Director, Texas | § | (U.S. Dist. Judge Frank Montalvo) |
| Department of Criminal Justice, | § | |
| Correctional Institutions Division, | § | |
| Respondent. | § | |

### RESPONDENT THALER'S RESPONSE IN OPPOSITION TO PETITIONER'S MOTION TO AMEND PETITION WITH BRIEF IN SUPPORT

Hall, convicted of capital murder and sentenced to death, seeks habeas corpus relief. *See* 28 U.S.C. § 2254 (West 2011). He has filed his petition, with brief in support (ECF[1] Nos. 27 & 28), and the Director has answered (ECF No. 40). Hall moves to amend his petition to incorporate newly arising facts, specifically, a recanting affidavit.

### FACTS

At trial, Jesse Eddy, an Indiana prison inmate, testified that on October 28, 2002, at a drug house on Melody Lane in El Paso, he heard Hall say that he, Hall, was going to kill the victim, Melanie Billhartz. (73 RR[2] 143.) Eddy also

---

[1] "ECF" refers to the documents filed in the district court's electronic case filing system, followed by the document number and, where appropriate, the page number.

[2] "RR" refers to the reporter's record of the trial testimony, preceded with the volume number and followed by the page number.

testified that in exchange for his testimony he had made no deals and expected no leniency. (73 RR 135.) Hall now offers an affidavit dated July 20, 2011, in which Eddy says,

> I have no independent memory of any of the events that occurred on the night of October 28, 2002. I know that I was at the house at 5608 Melody in El Paso, Texas, that night, but I do not recall any of the events that occurred or any statements made to me that night because I was under the influence of Methamphetamine at the time.

(Pet'r's Opposed Mot. for Leave to Am. Pet. for Writ of Habeas Corpus (Mot.) Ex. A at 1, para. 2.)

In his affidavit, Eddy says that before he made his pretrial statement to police, an officer showed him statements made by other witnesses and suggested that he, Eddy, "say the same things in my statement if I wanted to avoid charges involving the murder of Melanie Billhartz." (*Id.* at 2, para. 6.)

Eddy says he made his pretrial statement "based solely on the statements of the other witnesses, and not based on any independent memory of what happened on October 28, 2002, or of any statements made to me that night." (*Id.* at 2, para. 7.)

When Eddy met with prosecutors before trial to discuss his testimony, the prosecutors "told me to stick to what I had said in my [pretrial] statement and I would not get in trouble with other charges, including drug-related charges." (*Id.* at 3, para. 11.) Eddy says, "[Prosecutors] also asked me to sign a document

that I understood to be an immunity agreement, and I did sign the document."
(*Id.*)

## ARGUMENT

I. Hall's Amendment Is Barred by Limitation.

A. In developing his newly arising facts, Hall was not diligent.

The newly pleaded facts are barred by limitation. A habeas application is governed by a one-year limitation period, which runs from the latest of (1) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review or (2) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence. 28 U.S.C. § 2244(d)(1)(A) & (D) (West 2011). The time during which a properly filed application for state postconviction review with respect to the pertinent judgment or claim is pending is not counted toward any period of limitation. § 2243(d)(2).

As for the date the judgment became final, the Court of Criminal Appeals denied relief on direct review on June 27, 2007. *Hall v. State*, No. AP-75121, 2007 WL 1847314. The period for direct review ended ninety days later, on September 25, 2007, when the period for seeking Supreme Court certiorari review expired. *See* Sup. Ct. R. 13.1; *see also Flanagan v. Johnson*, 154 F.3d 196, 197 (5th Cir. 1998). But before the Court of Criminal Appeals denied relief on

direct review, Hall already had filed his state habeas application on March 19, 2007. *Ex parte Hall*, No. No. WR-70843-01 (Tex. Crim. App.) (Application for Writ of Habeas Corpus). Thus the limitation clock began running when the Court of Criminal Appeals dismissed Hall's application on June 10, 2009. *Ex parte Hall*, No. WR-70843-01, 2009 WL 1617087. The limitation period expired one year later on June 10, 2010, *see* § 2244(d)(1)(A), the date on which Hall timely filed his federal petition (ECF No. 27). Hall seeks to plead newly arising facts more than a year after the limitation period has expired. Based upon the date on which the judgment became final, the claim is barred by limitation.

Hall may still timely plead his new facts if he shows that the factual predicate could not have been discovered earlier through the exercise of due diligence. § 2244(d)(1)(D).

The claim's factual predicate, Eddy's affidavit, arose on July 20, 2011. (Mot. Ex. A. at 3.) Hall does not show that he was diligent in discovering the newly arising facts. At the time of his trial testimony, January 31, 2005, Eddy was an inmate in an Indiana prison. (73 RR cover, 133). When he signed the affidavit six and a half years later, Eddy still was a prisoner in Indiana. (Mot. Ex. A at 1, para. 1.) Hall does not show reasonable cause for the delay. He says that counsel tried to contact Eddy by placing a phone call to an Indiana prison on July 29, 2010, but the counsel ultimately was not able to contact the prisoner.

(Mot. Ex. D.) Even were one to presume that the statements in Eddy's affidavit are true, one might also presume that Eddy could have made the affidavit on the date he testified at trial or on any date thereafter. One might also presume that had counsel approached Eddy sometime after the trial but before July 29, 2010, the date on which counsel placed a phone call to the Indiana prison, Eddy would have recanted earlier. Although nothing suggests an exact date on which the factual predicate could have been discovered through due diligence, no evidence shows that the date arose after June 10, 2009, the date on which the judgment became final.

Nor is Hall entitled to equitable tolling. Such tolling is allowed in rare and exceptional cases. *Davis v. Johnson*, 158 F.3d 806, 811 (5th Cir. 1998); *see also Fisher v. Johnson*, 174 F.3d 710, 713 (5th Cir. 1999) (asserting that courts must examine each case on its facts to determine whether it presents sufficiently rare and exceptional circumstances to justify equitable tolling). Equitable tolling applies principally where the plaintiff is actively misled by the defendant about the cause of action or is prevented in some extraordinary way from asserting his rights. *Coleman v. Johnson*, 184 F.3d 398, 402 (5th Cir. 1999). The petitioner bears the burden of proof to show he is entitled to equitable tolling. *Phillips v. Donnelly*, 216 F.3d 508, 511 (5th Cir. 2000). Hall does not plead that he was misled or that anything extraordinary prevented him from timely filing.

Hall's prosecutorial-error claim, supported by Eddy's affidavit, is barred by limitation. § 2254(1)(d).

B.  **The new allegations do not relate back to the prior pleading because they differ in time and type from those pleaded originally.**

Hall argues that limitation should not bar his newly pleaded facts because the facts relate back to his original pleading. He errs.

An amended habeas petition does not relate back, and thereby escape a limitation bar, when it asserts a new ground for relief supported by facts that differ in both time and type from those set forth in the original petition. *Mayle v. Felix*, 545 U.S. 644, 650 (2005). An amendment relates back to the date of the original pleading when the claim asserted in the amendment arises "out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." *Id.* at 656 (citing Fed. R. Civ. P. 15(c)(2)). Under the rules governing habeas corpus pleadings, in his original petition, the petitioner must "specify all [available] grounds for relief" and to "state the facts supporting each ground." *Id.* at 661 (citing R. Gov'g § 2254 Cases in U.S. Dist. Cts. 2(c)). Each separate accumulation of facts supporting a ground for relief would delineate an "occurrence." *Id.*

"A prime purpose of Rule 2(c)'s demand that habeas petitioners plead with particularity is to assist the district court in determining whether the State should be ordered to 'show cause why the writ should not be granted.'" *Id.* at 656.

If it appears from the petition and "any attached exhibits" that the petitioner is not entitled to relief, the district court must dismiss the petition summarily without ordering a State response. *See id.* (citing R. Gov'g § 2254 Cases 4.) If the court orders the State to file an answer, that answer must address the allegations in the petition. *Id.* (citing R. Gov'g § 2254 Cases 5(b)). A new claim does not relate back simply because both the original claim and the new claim rely upon the same constitutional provision. *See United States v. Gonzales*, 592 F.3d 675, 680 (5th Cir. 2009).[3]

When Hall raised his prosecutorial-error claim in his original petition, he alleged that Eddy and prosecutors had an agreement, perhaps tacit, whereby Eddy in exchange for his testimony, would not be prosecuted for certain crimes. (ECF No. 28 at 36, 37, 38, 42–44, 49–50.) As evidence of the agreements, Hall offered (1) the agreement forms, signed by El Paso District Attorney Jaime Esparza but not Hall and (2) the authorities' failure to prosecute for the certain crimes. The agreement forms were offered, presented, and discussed in

---

[3] Although *Gonzales* interprets 28 U.S.C. § 2255 rather than § 2254, because of the actions under each section are similar, where the context does not indicate it would be improper, the sections have traditionally been read *in pari materia*. *See United States v. Flores*, 135 F.3d 1000, 1003 (5th Cir. 1998).

connection with the original habeas petition and are, thus, not newly offered evidence. (ECF No. 28 at 32; SHCR[4] 130–31.)

Hall now offers an affidavit in which Eddy states (1) that he signed a document that he "understood was an immunity agreement" and (2) that prosecutors told him that so long as his trial testimony was consistent with his pretrial statement he "would not get in trouble with other charges" (Mot. Ex. A at 3, para. 11.) The facts alleged in the amendment—Eddy's making an affidavit alleging that (1) he signed an "immunity agreement" and (2) the prosecutors made certain statements—differs in time from the facts pleaded in the original petition. Indeed, in the original petition Hall (1) did not allege that Eddy signed an agreement that Eddy understood to be an immunity agreement and (2) did not allege that the prosecutors made statements to Eddy regarding this trial testimony. (ECF No. 28 at 35–51.) Hence, when this Court reviewed the claim in the original petition, the Court may well have determined that the Director need not have addressed this prosecutorial-error issue. *See Mayle*, 545 U.S. at 656. And the Director in answering the original claim was not called upon to rebut the allegations that Eddy had signed an immunity agreement and that the prosecutors made certain statements to Eddy. *See id.* Because these allegations and facts differ in time and type from the allegations and facts leveled in the

---

[4] "SHCR" refers to the Clerk's Record of pleadings and documents filed with the state habeas court followed by the page number or numbers.

original petition, the amended claim does not related back to the original pleading. *See id.* at 650; *Gonzales*, 592 F.3d at 680.

Hall also alleges that at trial Eddy testified falsely. Hall suggests that when Eddy testified, Eddy had no personal recollection of the events of October 28, 2002. (Mot. Ex. A at 1, para. 2.) Hall suggests that Eddy in his testimony recited a story that he gleaned not from memory but from the recorded statements of other witnesses. (*Id.* at 3, para. 12.) This claim was not raised in Hall's original petition. (ECF No. 28 at 35–51.) Hence, the claim cannot relate back to the original pleading. *See Mayle*, 545 U.S. at 650. Indeed, in Hall's original petition, he alleged that the State failed to disclose evidence that would have been favorable to the defense because the evidence would have been related to impeachment. (ECF No. 28 at 43–44, 49–50.) Hall's false-testimony allegation deals not with impeachment but with an issue not raised in the original petition, that is, evidence that in substance is exculpatory. (*Id.* at 35–51.) Eddy testified that he heard Hall say that he, Hall, was going to kill Melanie Billhartz. (73 RR 143.) Hall alleges now that Eddy testified falsely, that Eddy did not recall such a statement, and that had Eddy testified truthfully, Eddy would never have said that he heard such a statement.

This claim, in either time or type, was not raised in the original petition. (ECF No. 28 at 35–51.) Hence, this amended claim cannot relate back to the

original petition. *See Mayle*, 545 U.S. at 650. Hall fails to avoid the limitation bar through the relating back to the original petition. *See id.*

II. **A Merits Review by this Court Is Limited to That Evidence That Was Before the State Court.**

As will be discussed below, the prosecutorial-error claim is defaulted. (ECF No. 40 at 11–14, 33.) But were it assumed that the state court adjudicated Hall's claim on the merits, this Court must evaluate the state court's decision based on the evidence before the state court when it made its decision. *See Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011) (holding that "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits."). Hence this new evidence and claim, even had it been presented in connection with Hall's original petition, was not presented to the state court. Hence, the evidence and claim do not figure in this Court's evaluation of the state court's presumed merits adjudication.

III. **An Amended Petition Would Be a Mixed Petition Subject to Dismissal.**

Should this Court allow Hall to amend, his petition then would become a mixed petition, that is, a petition containing both exhausted and unexhausted claims. Such a petition under ordinary circumstances should be dismissed. *Pliler v. Ford*, 542 U.S. 225, 230 (2004); *Rose v. Lundy*, 455 U.S. 509, 510, 522 (1982). An alternative to dismissal is a stay and abeyance, to which, as will be discussed below, Hall is not entitled.

## VI. Hall Does Not Qualify for a Stay and Abeyance.

Nor is Hall entitled to a stay and abeyance to return to state court to present his newly arising facts and new allegations. A stay and abeyance is appropriate only where this Court determines (1) there was good cause for the petitioner's failure to exhaust his claims first in state court, (2) where the "unexhausted" claims are not plainly meritless, and (3) where the petitioner has not engaged in abusive litigation tactics or intentional delay. *Rhines v. Weber*, 544 U.S. 269, 277–78 (2005).

### A. Hall shows no good cause for not presenting the claims previously.

Hall would fail to meet the standard for a stay and abeyance. Not only does he not show good cause for failing to present the factual predicate and claims at issue in his initial federal petition, he shows no cause at all. *See id.*

### B. The claims have no merit.

#### 1. The claims are defaulted.

A stay and abeyance should is appropriate only when the claims are "unexhausted" and not plainly meritless. *Rhines*, 544 U.S. at 277–78. As the Director argued in his answer, because Hall never presented his prosecutorial error claim to the state courts in a manner that would assure merits review and because were he to present the claims in an application now, the application would be dismissed as abusive, the claim is defaulted. (ECF No. 40 at 11–14, 33.)

-11-

Hence, were this Court to allow Hall to amend, the new pleading would amend a claim already defaulted.

Were this Court nonetheless to allow Hall to amend his petition with his newly arising facts and his new factual allegation, the new claims would be unexhausted; that is, the claim and factual allegations would never have been presented to the state courts. Were Hall to return to state court now to present his newly arising facts and new claims, the state court would dismiss the claim as abusive. See Tex. Code Crim. Proc. art. 11.071, § 5 (West 2011). Hence, the allegations and claims are defaulted. *See Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991).

2. **The allegations do not show prosecutorial error.**

Even if this Court does not consider the claim's default, Hall's credibility-related claim, that is, his claim that the State and Eddy struck a deal for his testimony, has no merit.

Irrespective of the good faith or bad faith of the prosecution, where evidence is material either to guilt or punishment, the suppression by the prosecution of evidence favorable to an accused after a request violates due process. *Brady v. Maryland*, 373 U.S. 83, 87 (1963). To establish a violation, the petitioner must prove (1) the prosecutor suppressed or withheld evidence (2) that was favorable and (3) material to the defense. *Moore v. Illinois*, 408 U.S. 786,

794–95 (1972). The rule applies to impeachment evidence. *United States v. Bagley*, 473 U.S. 667, 676 (1985). The evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. *Id.* at 684.

The only direct evidence of a deal between the prosecutors and Eddy is Eddy's affidavit, in which he says that (1) he signed a document that he "understood" was an immunity agreement and (2) the prosecutor told Eddy that if his trial testimony was consistent with his pretrial statement, Eddy "would not get in trouble with other charges." (Mot. Ex. A at 3, para. 11.) Neither Eddy nor Hall has produced an immunity agreement signed by Eddy. Indeed, Eddy does not even state that the document he purportedly signed was an immunity agreement. He alleges only that he "understood" it to be so. (*Id.*)

As for his recitation of the prosecutor's purported statements, his affidavit, made six years after trial, is controverted by Eddy's own trial testimony, in which he agreed that he had made no deals and expected no leniency. (73 RR 135.) Eddy's trial testimony is consistent with the prosecutors' postconviction testimony.[5] (SHCR 102–03, 118–19.) As for the agreement forms signed by the district attorney Jaime Esparza, the prosecutor testified in postconviction proceedings that the forms were prepared in case a witness wanted to "wiggle

---

[5] Before Hall waived his right to state postconviction review, the state court already had held an evidentiary hearing on some of Hall's claims. (SHCR 87–227.)

out" of testifying, the prosecutors would have the prepared form in reserve. (SHCR 130–31.)

This circuit has long viewed recanting affidavits with extreme suspicion. *Summers v. Dretke*, 431 F.3d 861, 872 (2005). Eddy's affidavit deserves no special credence. It stands alone and is uncorroborated and unsupported. *Id.* It should also be noted that halting the habeas process whenever the petitioner offers a recanting affidavit, no matter how immaterial, would allow a petitioner and a recanter to hold the process hostage. As noted by another court, "There is no form of proof so unreliable as recanting testimony. In the popular mind it is often regarded as of great importance. Those experienced in the administration of the criminal law know well its untrustworthy character." *People v. Shilitano*, 112 N.E. 733, 736 (N.Y. 1916).

Were this Court to take Eddy's affidavit at face value, Hall would not be entitled to relief because the matter is not material. *See Bagley*, 473 U.S. at 684. Eddy testified that on October 28, 2002, he heard Hall state that he, Hall, was going to kill Billhartz. (73 RR 143.)[6]

The primary evidence linking Hall to the murder of Billhartz was Hall's pretrial statement in which he confessed to killing Billhartz. (73 RR 40–47, SX 61). Also Ted Murgatroyd testified that on the night in question he, Billhartz,

---

[6] Eddy also testified that on the night in question he was at the Melody Lane house cooking methamphetamine. (73 RR 138.)

Hall, and several others were hanging out at the Melody Lane drug house. (72 RR 13–14.) Murgatroyd and Billhartz had gotten into an argument, and he had struck her. (72 RR 17–18.) Billhartz threatened to call police. (72 RR 22.) Others at the house did not want the police called because people at the house were taking and manufacturing drugs. (72 RR 22.) Murgatroyd testified that he heard Hall say, in relation to Billhartz, "Fuck that. Grab some trash bags. Get the shotgun. I'm going to kill this ho." (72 RR 23.) Some hours after the argument with Billhartz, Murgatroyd saw Hall drive up to the house in Billhartz's pickup truck with her body in the bed of the truck. (72 RR 26.) Murgatroyd testified that Hall said, "It's done. . . . Get a shovel. Let's bury this ho." (72 RR 27.) Murgatroyd testified that he helped Hall bury the body. (72 RR 31–32.) Tim Ray Davis, who also was at the house on the night in question, testified that Hall told several people at the house, "We'll kill [Billhartz], wrap her up in these plastic bags, and bury her right here in this shed." (74 RR 96.) Davis said that some days later he ran into Hall and that Hall had described to him how he had killed Billhartz. (74 RR 103–04.)

Eddy's testimony is cumulative of the testimony of Murgatroyd and Davis, who also heard the statement. Stronger evidence of Hall's guilt comes from his postmurder confessions to Murgatroyd, Davis, and police. Even if prosecutors

failed to disclose a deal with Eddy, the lack of disclosure would not undermine confidence in the trial's outcome. *See Bagley*, 473 U.S. at 678, 684.

As for Eddy's allegation about his lack of personnel recollection, the claim also is not material. *See id.* Eddy avers that on July 20, 2011, when he made the affidavit, he had no independent memory of the events of October 28, 2002. (Mot. A at 1, para. 2.) In that affidavit, he says that when he prepared a pretrial statement on November 24, 2002 (73 RR 19–20, 24), he had no independent memory of the events of October 28, 2002. (Mot. A at 2, para. 7.) And his affidavit says that when he testified on January 31, 2005, he had no memory of the events of October 28, 2002. (*Id.* at 3, para. 12.) Whatever Eddy stated in his affidavit on July 20, 2011, may reflect not his failure to recall the events of October 28, 2002, but his failure in July 2011 to recall the condition of his memory on November 24, 2002, when he gave his pretrial statement, and on January 31, 2005, when he testified. It is possible that when Eddy testified on January 31, 2005, he did, in fact, have independent recollection of the events on Melody Lane. It is possible that his 2011 affidavit reflects a failure to recall the prior state of his memory.

And even if the Court were to assume that Eddy's trial testimony arose not from his independent recollection of events but from his reciting the reports of others, a due process violation does not arise unless false or misleading evidence

is known to be such by the State. *See Napue v. Illinois*, 360 U.S. 264, 269 (1959). Eddy does not allege that the police or prosecutors knew of his lack of memory and knew that he testified falsely. (Mot. Ex. A at 2, para. 6.) Eddy says only that a detective "suggested that I should say the same things in my statement [that others had said in their statements] if I wanted to avoid charges involving the murder of Melanie Billhartz." (*Id.*) Eddy does not say that he told police or prosecutors that he had no independent recollection of the events of October 28, 2002, and that his testimony was false.

Moreover because Eddy's inculpatory testimony was cumulative of the testimony of Murgatroyd and Davis, it was not material. *See Bagley*, 473 U.S. at 678, 684.

Because Hall does not show that his prosecutorial-error claim has merit, he is not entitled to a stay and abeyance. *See Rhines*, 544 U.S. at 277–78.

## CONCLUSION

This Court should deny Hall's motion to amend his habeas corpus petition.

Respectfully submitted,

GREG ABBOTT
Attorney General of Texas

DANIEL T. HODGE
First Assistant Attorney General

DON CLEMMER
Deputy Attorney General
 for Criminal Justice

EDWARD L. MARSHALL
Chief, Postconviction Litigation Division


/s/ Thomas M. Jones
THOMAS M. JONES*
*Attorney-In-Charge            Assistant Attorney General
Postconviction Litigation Division

State Bar No. 00784357

P. O. Box 12548, Capitol Station
Austin, Texas  78711-2548
(512) 936-1400
Fax No. (512) 936-1280
E-mail: Thomas.Jones@oag.state.tx.us

ATTORNEYS FOR RESPONDENT

## CERTIFICATE OF SERVICE

I hereby certify that on the August 22, 2011, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following:

Counsel for Hall:

Goutam Patnaik
Pepper Hamilton, LLP
600 14th St. NW
Washington DC 20005-2011
email: patnaikg@pepperlaw.com

Kathryn M. Kase
Texas Defender Service
1927 Blodgett
Houston TX 77004
email: kmkasw@texasdefender.org

William S.D. Cravens
Bingham McCutchen, LLP
2020 K St. NW
Washington DC 20002
email: william.cravens@bingham.com

                                          /s/ Thomas M. Jones
                                          THOMAS M. JONES
                                          Assistant Attorney General